AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Information Associated with the Cellular Device Assigned<br>Call Number 513-596-2421 That is Stored at Premises<br>Controlled by AT&T Corporation | )<br>)<br>)<br>)<br>)<br>)    Case No.   **1:21-MJ-00662** |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____ Southern _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951(a) | Hobbs Act Robbery |
| 18 USC 371 | Conspiracy to Commit a Hobbs Act Robbery |

The application is based on these facts:

See attached affidavit of ATF Special Agent Derek Graham.

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DEREK GRAHAM
Digitally signed by DEREK GRAHAM
Date: 2021.09.13 15:25:09 -04'

*Applicant's signature*

Derek Graham, Special Agent, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ FaceTime videoconference _____ *(specify reliable electronic means)*.

Date: **Sep 13, 2021**

*Stephanie K. Bowman*

*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **513-596-2421** that are stored at premises controlled by AT&T Corporation (AT&T), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **February 1, 2021 to February 28, 2021**:

    a.  The following information about the customers or subscribers of the Account:

        i.  NELOS Records

**II.  Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 371 involving LAMOND JOHNSON and WILLIE ATTAWAY on or about February 8 and 9, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 513-596-2421 THAT IS STORED AT PREMISES CONTROLLED BY AT&T | Case No.  __1:21-MJ-00662__<br><br>__Filed Under Seal__ |
|---|---|

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Derek Graham, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with the cellular telephone assigned call number **513-596-2421** ("the **TARGET CELL PHONE**") that is stored at premises controlled by AT&T Corporation (AT&T), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so employed since October of 2007. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Brunswick, Georgia. I graduated from the ATF Special Agent Basic Training Academy, located in Brunswick, Georgia, in April 2008. Prior to my employment

with ATF, I was a Federal Air Marshal in the Department of Homeland Security from June 2006 through October 2007. In addition, I was a Criminal Research Specialist with the Washington, DC High Intensity Drug Trafficking Area/Drug Enforcement Administration from June 2003 through June 2006. I am a graduate of Augustana College, where I received a Bachelor's degree in Business Administration in May of 2002. I am also a graduate of Boston University, where I received a master's degree in Criminal Justice in June of 2006.

3.      I have experience in the investigation, apprehension, and prosecution of individuals suspected of being involved in federal firearms and drug offenses. I have specific experience in investigating the use of cell phones by criminal suspects who are involved in the commission of those offenses. I also have knowledge of the technology used by law enforcement authorities to identify cell phones' users and geographic locations. I have applied for, obtained, and analyzed, or assisted other federal Special Agents and local police officers with applying for, obtaining, and analyzing, more than 360 sets of historical call detail records. In addition, I have mapped in excess of 200 sets of historical records related to telephone cell site information, ping order locations, and/or GPS records. I have been trained by ATF as a Digital Media Collection Specialist (DMCS), and have completed more than 285 forensic extractions of cellular telephones, computers, and other electronic storage media. I have also reviewed forensic extractions of cellular telephones, computers, and other electronic storage media, and have examined content and communications contained within these devices obtained by forensic extraction. This content includes records of communication through call logs, text message content, images and videos, and communication made through various social media applications.

4.      I know from training and experience that individuals typically keep cell phones on their persons or within their immediate control, such as in the cupholder of a car they are driving,

because cell phones are regularly used and possessed as an item of personal property.

     5.     Through training and experience, I know that acquiring an extended period of call detail records can assist, through proper analysis, in establishing a pattern of life, or "normal" use, of a target telephone. The more historical data that is available, the more accurate and thorough the analysis of those records can be. An extended period of records can assist investigators in establishing calling patterns of the target telephone to and from associate dialed numbers, as well as prevalent cell sites and sectors used by the target telephone. The identification and establishment of this pattern of life, or "normal" use, is critical in helping investigators determine if, and when, the user's calling pattern changes, intensifies, or wanes at relevant times. Changes in usage patterns before, during, and following relevant time frames of criminal or other activity can, through analysis, identify pattern "anomalies" and successfully lead investigators to the identification of additional investigative leads, including the identification of victims, witnesses, and suspects.

     6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

     7.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1951(a) (Hobbs Act Robbery) and 371 (Conspiracy to Commit a Hobbs Act Robbery) have been committed by LAMOND JOHNSON and WILLIE ATTAWAY. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

3

## PROBABLE CAUSE

### A. Introduction

8.     Over the course of two days, from February 8 to 9, 2021, five gas stations or convenience stores in Hamilton, Mason, Madeira, Blue Ash, and Lebanon, Ohio (all within the Southern District of Ohio), were robbed. In one of the robberies, the suspect shot the owner of the store, who later died from his injuries.

9.     As I explain in more detail below, based on the investigation to date, I believe that WILLIE ATTAWAY and LAMOND JOHNSON are responsible for all five robberies.

10.     I am seeking this warrant for information from AT&T because there is probable cause to believe that the requested information will provide evidence of the crimes under investigation, including evidence that the user of the **TARGET CELL PHONE** was present at the robberies. As explained below, I believe the **TARGET CELL PHONE** was being used by WILLIE ATTAWAY as of February 2021.

### B. On February 8, 2021, at around 7:48 pm, a Shell gas station in Mason was robbed by a suspect carrying a firearm.

11.     On February 8, 2021, at approximately 7:48 pm, the Warren County Sheriff's Office received a report of a robbery at the Shell Gas Station at 9791 Mason Montgomery Road in Mason, OH. Shell Gas Station is engaged in the sale of alcohol and/or other items that, based on my training and experience, I know have affected interstate commerce.

12.     Surveillance video from that evening, which includes audio, shows that two Shell Gas Station employees, Victim 1 and Victim 2, were working behind the counter in the area of the cash registers when a suspect who appears to be a Black male entered the gas station. The suspect was wearing a black hooded sweatshirt that read "Nike" in white lettering, with a white

4

Nike "swoosh" logo. The sweatshirt's hood was over his head. The suspect was also wearing

black pants with a white logo on the left pant leg, black gloves, black shoes with a small bit of

white on the top, and a red face mask or bandana with white accents, as shown in the screenshot

below.



13.     After entering, the suspect walked around the counter to the employee area,

where Victim 1 and Victim 2 were standing. The suspect then demanded that Victim 1 and

Victim 2 open the cash register and place the currency from the cash registers in a bag. Victim

1 and Victim 2 each opened their respective cash registers and placed the currency from their

cash registers into separate plastic bags. The suspect then took the bags and left. As the suspect

left, Victim 1 and Victim 2 raised their hands in a gesture that, based on my training and

experience, I believe they intended to mean "Do not shoot."

14.     Surveillance video shows that, after leaving the gas station, the suspect ran

west.

15.     Surveillance video from a nearby BP gas station, which is located south of the

Shell station, shows that, at approximately the same time as the robbery, a person ran from the

Shell station over to Monro Auto Service, which is west of the Shell station, and got into a large,

5

white SUV as a passenger. The SUV drove away. Based in part on this video, I believe that the suspect had a coconspirator who was driving the getaway vehicle.

16.     In an interview, Victim 1 and Victim 2 both said they had seen a firearm.

**C. Less than an hour later, a Shell gas station in Hamilton was robbed by an armed suspect matching the same description.**

17.     Less than an hour later, at approximately 8:34 pm on February 8, the Hamilton Police Department received a report of a robbery at the Shell Gas Station at 2693 Dixie Highway in Hamilton, OH. This Shell gas station is approximately 17 miles from the Shell station described in the preceding section; a search for directions on Google Maps shows that driving from one to the other would take approximately 28 to 35 minutes, depending on the route.

18.     Shell Gas Station is engaged in the sale of alcohol and/or other items that, based on my training and experience, I know have affected interstate commerce.

19.     Surveillance video from that evening shows a suspect matching the description of the suspect in the earlier robbery entering the gas station. Specifically, the surveillance video shows an individual who appears to be a Black male and who appears to be wearing the same outfit as the suspect from the Mason incident: a black hooded sweatshirt reading "Nike" and with the "swoosh" logo (and with the hood up), black gloves, black shoes with a tiny bit of white on top, and a red face mask or bandana with white accents pulled across his face. The suspect appears to be holding a firearm in his right hand, as shown below:

6



20.     Surveillance video shows that the suspect walked behind the counter, while holding the suspected firearm in his right hand, to where a Shell Gas Station employee (Victim 3) was standing. The suspect then directed Victim 3 to put the currency from the cash register into a bag. Victim 3 complied, and the suspect then took the bag and left.

### D. The next day, at approximately 7:39 pm, Victim 4 was shot and killed during an attempted robbery at Madeira Beverage.

21.     The next day, on February 9, 2021, at approximately 7:39 pm, Madeira Police Department (MPD) received a report of an attempted robbery in which a person had been shot. The attempted robbery occurred at Madeira Beverage, a convenience store, located at 6005 Kenwood Road, Madeira, OH.  Madeira Beverage is engaged in the sale of alcohol and/or other items that, based on my training and experience, I know have affected interstate commerce.

22.     The shooting victim (Victim 4) was the owner of Madeira Beverage and had been working in Madeira Beverage that evening. Victim 4 succumbed to his gunshot-related injuries later that same night.

23.     That same night, MPD Officers and participating officers located an expended .25 caliber cartridge casing suspected to be ejected from the firearm during the shooting of Victim 4.

7

24.     Surveillance video from that evening shows that a suspect, who appears to be a Black male, entered the store wearing a black hooded sweatshirt. The sweatshirt had a white logo or text in the upper left chest area. The suspect was also wearing a red face mask or bandana on his face.



25.     The suspect entered the store and appeared to look down multiple aisles as he walked through the store. The suspect then confronted Victim 4, at which time Victim 4 and the suspect appeared to push and wrestle with each other for approximately four seconds. Victim 4 then raised his hands as the suspect displayed and pointed a firearm at Victim 4, as shown in the image below:



26.     Surveillance footage shows that Victim 4 then appeared to wave the suspect away. Victim 4 then stepped backwards and turned while holding his abdomen. The suspect then exited Madeira Beverage.

**E.  Less than 15 minutes later, a Sunoco gas station in Blue Ash was robbed at gunpoint.**

27.     Less than 15 minutes later, at approximately 7:50 pm on February 9, Blue Ash Police Department received a report of a robbery at the Sunoco Gas Station at 10410 Kenwood Road in Blue Ash, OH.  This Sunoco is approximately five miles from Madeira Beverage, both of which are on Kenwood Road.

28.     Sunoco Gas Station is engaged in the sale of alcohol and/or other items that, based on my training and experience, I know have affected interstate commerce.

29.     Surveillance video of this incident is not currently available for review.

30.     I have reviewed a statement written out by a law enforcement officer who interviewed an employee working at the Sunoco gas station that night (Victim 5). The statement indicates that the police officer "wrote out [the] statement" for Victim 5 "due to language barrier." Victim 5 said that the suspect was a Black man wearing a red jacket and a black face mask. Victim 5 said that he/she "saw a small black gun." Victim 5 said that the suspect aimed the firearm at Victim 5 and said "open the register & take a plastic bag & put in the money." Victim 5 said that he/she and the suspect then put money in the bag and that the suspect then took the bag and ran out towards Kenwood, around the building.

31.     Although Victim 5's description of the suspect differs from the description of the suspect observed in surveillance video described above, I believe that the same suspect, and/or his coconspirator, was likely involved in this robbery due (in part) to the geographic and

temporal proximity to the other robberies described in this affidavit.

32.     As I described above, surveillance video relating to the incident at the Shell station in Mason suggests that, after the robbery, the suspect got into a white SUV as the passenger. Similarly, as I describe below, a witness to the fifth robbery, in Lebanon, saw the suspect run from the store and get into a vehicle as a passenger. Based in part on these facts, I believe that the robber was not acting alone.

**F.  About 90 minutes later, a suspect in a black hoodie and a red mask attempted to rob a Marathon gas station in Lebanon at gunpoint.**

33.     Later the same night, at approximately 9:19 pm, Lebanon Police Department (LPD) received a report of an attempted robbery at the Marathon Gas Station located at 660 North Broadway Street, Lebanon, OH. This Marathon Gas Station is approximately 18 miles away from the Sunoco described in the preceding section; a search on Google Maps suggests that a direct trip between the two would take approximately 25 minutes.

34.     Marathon Gas Station is engaged in the sale of alcohol and/or other items that, based on my training and experience, I know have affected interstate commerce.

35.     Based on reports I have reviewed, I understand that the surveillance cameras in the Marathon Gas Station were not operational at the time of the incident.

36.     An employee of the Marathon Gas Station, Victim 6, said that a Black male entered the store wearing a black sweatshirt and with a red mask on his face with white accents on the fabric.

37.     Victim 6 said the suspect entered the store, removed a soda pop from the cooler, and approached the counter. Victim 6 stated he/she told the suspect how much the soda pop cost, at which the time suspect pointed a firearm at Victim 6 and staid, "Give me what you got." Victim 6 said he/she did not comply with the suspect's demand and instead leaned down

10

and grabbed under the counter, pretending he/she had a firearm. Victim 6 said the unidentified subject then ran from the Marathon Gas Station.

38.     Victim 6 said he/she saw what he/she believed to be a small dark-colored SUV pick up the unidentified subject and travel south on North Broadway. Victim 6 described the driver as a Black male wearing a mask of an unknown color.

39.     Victim 6 said he/she attempted to follow the vehicle as it drove south on North Broadway. In addition, traffic cameras in the city of Lebanon captured a suspected Chevrolet Equinox, driving with its headlights off, as it continued south on North Broadway and then turned left on Main Street, driving east.

### G.  Information from Google suggests that Google accounts associated with LAMOND JOHNSON were present at all five of the robberies.

40.     Based on my training and experience, as well as open-source materials published by Google LLC ("Google"), I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

41.     Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by

11

Google as a "maps display radius," for each latitude and longitude point.

42. On March 25, 2021, the Honorable Stephanie K. Bowman, U.S. Magistrate Judge for the Southern District of Ohio, issued search warrant 1:21-MJ-00249, commanding Google LLC to provide, among other things, location information associated with three accounts associated with LAMOND JOHNSON, namely:

43. Google Account ID 369781974448, with the following subscriber information:

    a. Name: LAMOND JOHNSON

    b. Email: johnsonlamond33@gmail.com

    c. Recovery Email: johnsonlamond3@gmail.com

    d. Recovery SMS: 513-280-1364

44. Google Account ID 583241281066, with the following subscriber information:

    a. Name: Salvatore Ferragamo

    b. Email: johnsonlamond3@gmail.com

    c. Recovery Email: johnsonlamond33@gmail.com

    d. Recovery SMS: 513-280-1364

45. Google Account ID 849998195587, with the following subscriber information:

    a. Name: LAMOND JOHNSON

    b. Email: johnsonlamond86@gmail.com

    c. Recovery Email: None Listed

46. I believe that all three of these accounts were created and/or used by LAMOND JOHNSON, because all three of these accounts are associated with the name "LAMOND JOHNSON" either in the subscriber name or in the email address (all three of which are

12

variations on "johnsonlamond"). Moreover, because 513-280-1364 is the "Recovery SMS" phone number for two of the three accounts, I believe the user of these accounts likely uses 513-280-1364.[1]

47.    On March 5, 2021, I queried telephone number 513-280-1364 through a database accessible by law enforcement that I have determined in the past to be accurate and credible. Based on this query, I identified telephone number 513-280-1364 to be associated with LAMOND JOHNSON.

48.    In response to the search warrant, Google provided precise location data showing that, within a few minutes of when each of the above-described robberies was reported, a device associated with the three above-described Google accounts was present at, or within a few hundred yards of, the robbery. Based in part on this precise location data, and the information linking JOHNSON to the three Google accounts, I believe JOHNSON was present at all five robberies.

I.    **Information from AT&T suggests that the TARGET CELL PHONE, associated with WILLIE ATTAWAY, was also present at all of the robberies.**

49.    Based on my training and experience, I know that cellular service providers can provide information about which phone numbers connected to cellular towers servicing particular geographic areas during certain time periods.

50.    On March 9, 2021, the Honorable Stephanie K. Bowman issued search warrant 1:21-mj-00202, ordering AT&T to provide information and records relating to the cellular towers with which phone number 513-596-2421 interacted at relevant times in February 2021.

---

[1] Based on my training and experience, I know that a "Recovery SMS" phone number is the phone number to which Google sends a text message if the user forgets the password to his or her account.

13

Records from AT&T show that this phone number is subscribed to WILLIE ATTAWAY.

51. In response to the search warrant, AT&T provided records showing that phone number 513-596-2421 interacted with cellular towers in the approximate areas of each of the five robberies at approximately the same times as those robberies were reported.

52. Toll records show that phone number 513-596-2421, subscribed to ATTAWAY, communicated with 513-280-1364, associated with JOHNSON, more than 50 times in February 2021.

**J. On March 7, 2021, JOHNSON and ATTAWAY attempted to flee after law enforcement pulled over the Equinox JOHNSON was driving.**

53. On March 7, 2021, agents and officers began surveilling a dark-blue Chevrolet Equinox (the "Equinox") being driven by LAMOND JOHNSON. Agents and officers were able to maintain surveillance by following GPS location data for phone number 513-280-1364, which, as described above, had been linked to JOHNSON and to all of the robberies via information from Google.

54. Later that day, when agents and officers attempted to stop the Equinox, two men—LAMOND JOHNSON and an individual later identified as ATTAWAY—ran from the vehicle. JOHNSONwas arrested, but ATTAWAY escaped.

55. Officers and agents later searched the Equinox and found a .25 caliber firearm. A NIBIN analysis linked this firearm to the expended casing found at Madeira Beverage.

56. A few days later, ATTAWAY turned himself in to law enforcement and admitted in a Mirandized interview that he had fled from the Equinox on March 7, 2021.

**K. AT&T likely has relevant evidence.**

57. Based on records from AT&T showing that the **TARGET CELL PHONE**

14

interacted with a cell sites in the approximate areas of each of the five robberies, and at approximately the same times those robberies were reported; the fact that the **TARGET CELL PHONE** is subscribed to WILLIE ATTAWAY; the fact that ATTAWAY admitted to fleeing from the Equinox being driven by LAMOND JOHNSON, who is associated with a device that Google records show was present at all of the robberies; and the fact that the Equinox matches the description of a vehicle present at at least one of the robberies, I believe there is probable cause to believe that evidence of the location of the **TARGET CELL PHONE** at relevant times in the past will constitute evidence of the crimes under investigation.

58.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

59.     Based on my training and experience, I know that AT&T can collect cell-site data about the **TARGET CELL PHONE**. I also know that wireless providers such as AT&T

15

typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. I know that AT&T also collects and maintains additional location data, referred to by AT&T as "NELOS" records, which detail the approximate latitude and longitude of a cellular phone at specific times and dates.

## AUTHORIZATION REQUEST

60.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

61.     I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

DEREK GRAHAM

Digitally signed by DEREK GRAHAM
Date: 2021.09.13 15:25:55 -04'00'

DEREK GRAHAM
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosive

Subscribed and sworn to before me in accordance with Federal Rule of Criminal Procedure 4.1 on September _13_, 2021 **via electronic means, specifically Facetime video.**

HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

16